UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TAS ENERGY, INC.

          Plaintiff,

        v.                                Case No. 8:14-cv-3145-T-30MAP

STELLAR ENERGY AMERICAS, INC.,
AMEC FOSTER WHEELER KAMTECH, INC.,
DUKE ENERGY FLORIDA, INC.,

          Defendants.
_____/

## REPORT AND RECOMMENDATION

This patent infringement action involves two competitors (TAS and Stellar) who design TIAC systems (combined gas turbine inlet air cooling and thermal energy storage systems) and who competed for Duke's retrofit of its Hines power plant. And this is the second time TAS has moved for preliminary injunction in connection with the litigation (doc. 107). In sum, TAS contends that Stellar and Amec, the firm that selected Stellar over TAS, will infringe TAS's '815 patent (patent number RE44,815) if they build the TIAC system as planned. Stellar and Amec deny all this and add that the '815 patent is invalid for obviousness (and other reasons) (doc. 132). The district judge referred the matter to me for all hearings necessary and for a report and recommendation as to the motion's disposition. *See* 28 U.S.C. § 636 and Local Rule 6.01. After an evidentiary hearing, oral argument, and extensive briefing on the issues, I recommend the motion be denied because TAS, for many of the reasons Stellar and Amec put forth, cannot show it is likely to succeed on the merits.

*A.  Background*

A TIAC system cools air funneled into an energy-generating gas turbine, allowing the turbine to produce energy more efficiently.  All TIAC system types operate along the principles of an air conditioner and, like with air conditioning systems, a variety of methods are available for chilling the inlet air.  *See generally* doc. 69, Transcript of PI Hearing at pp. 20-36; doc. 22, Thomas L. Pierson Aff. at ¶¶ 12-14; doc. 36, Douglas T. Reindl Aff. at ¶ 14. TAS owns several patents that involve TIAC systems, including the '815 patent, further described as a "system and method for chilling inlet air for gas turbines."  *See* doc. 96-1 ('815 patent) at 1:1-2.

To meet Florida's ever-increasing energy demands, Duke embarked on a project to retrofit the gas turbines at its Hines facility in Bartow with chillers.  From late 2012 to early 2013, Duke courted both TAS and Stellar, inviting both to suggest suitable TIAC designs. When Duke first approached the firms, Duke had not yet formulated its request for proposal (RFP).  But after issuing its RFP, Duke invited both to bid on the project.  Although Duke made specific demands about a TIAC system, its RFP allowed the bidders to propose alternative suggestions.  *See* doc. 20 at p. 6; doc. 23-3, Huw Pierce Aff., Ex. 3.[1]

With both TAS and Stellar competing for the lucrative contract, the litigation commenced.  TAS sued Stellar (but not Duke) for infringement of its '815 patent (doc. 1),

---

[1] Duke's intended retrofit effort resembles the model for any construction project. An EPC (engineering, procurement, and construction contractor) would serve much like a general contractor for the project and oversee the retrofit of the TIAC systems.  The EPC would review bids and contract with the TIAC system firm.

claiming that Duke's RFP read on TAS's '815 patent and that Stellar, by acting on the RFP, would necessarily infringe the patent.  TAS took this position even though Duke had not yet acted on the RFP, had not yet selected an EPC, and no EPC had yet selected a TIAC system engineer.  And to forestall further action by Stellar (and Duke as well), TAS moved to preliminarily enjoin Stellar from infringing its '815 patent.  *See* doc. 16.  The district judge referred this matter to me, and I denied the motion without prejudice after an evidentiary hearing, finding the motion premature given the possibility that TAS could be the winning TIAC system bidder.  *See* doc. 74.

    After TAS's first effort at a preliminary injunction failed, Duke awarded the retrofit contract to Amec (Duke's EPC), who then selected Stellar's design.  TAS, contending that Duke's contract with Amec necessarily reads on the patent, sued all three for infringement and next moved to preliminarily enjoin Amec and Stellar (but not Duke) "from engaging in the commercial manufacture, use, offer to sell, or sale within the United States, or importation into the United States, any chilling system for electricity-generating gas turbines that combines inlet-chilling and chilled water thermal energy storage technology, including the system offered and planned for installation at the Hines Power Plant."  Doc. 107 at 25. Stellar and Amec deny their contract's specifications infringe the '815 patent and add that in any event the '815 patent is nothing new under the sun and is therefore invalid for obviousness (and for other reasons as well).  *See* doc. 132.[2]

---

[2]  Stellar and Amec are represented by the same firm, and that firm has represented Stellar since TAS filed its original complaint.  Although Amec was not a party when TAS

*B. Standards*

TAS, to prevail on its motion, must satisfy the usual four factors: that it is likely to succeed on the merits; that it is likely to suffer irreparable harm in the absence of the demanded relief; that the balance of equities favors it as opposed to Stellar, Amec, and those acting in concert with them (e.g., Duke); and that an injunction serves the public's interest. *Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625, 629 (Fed. Cir. 2015). The remedy TAS asks for is "drastic and extraordinary" and is not one a court should "routinely" grant. *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1324 (Fed. Cir. 2004); *see also Vascular Sols., Inc. v. Boston Sci. Corp.*, 562 Fed. App'x. 967, 967 (Fed. Cir. 2014) (vacating the issuance of a preliminary injunction because there were "too many unresolved issues at this stage of the case and the record [was] too incomplete on issues of claim construction, infringement, and ultimate validity to warrant the grant of a preliminary injunction"). And lastly, the motion is the type that is committed to the district judge's discretion, only to be reversed on review for a clear error of judgment in weighing the relevant factors, or making a clearly mistaken factual finding, or making an error of law.

---

filed its first motion for preliminary injunction, and therefore did not participate at the evidentiary hearing held on February 27, 2015, dealing with that motion, Amec, Stellar, and TAS agree that the Court can consider for the current motion all the evidence adduced at that hearing and all the pleadings presented for and against TAS's first motion. Because both Stellar and Amec make the same arguments, any reference I make to Stellar's arguments applies equally to Amec's assertions unless otherwise noted.

*Takeda*, 785 F.3d at 629.[3]

## C. Discussion

TAS's '815 patent is a method patent (a "system and method for chilling inlet air for gas turbines"). *See* doc. 96-1. A method patent claims a number of steps, and a patent is not infringed until all the steps are carried out. *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2117 (2014). TAS maintains that the plans and specifications in Duke's contract with Amec and Amec's contract with Stellar read literally on claims 21, 27, 58, 60, 63, 64, 76, 77, and 81, with claims 21 and 76 as the representatives of the group.[4] *See* doc.

---

[3] Although I cite Federal Circuit precedent, on procedural matters not unique to the areas over which the Federal Circuit has exclusive jurisdiction, the procedural law of the applicable regional circuit applies. *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 894 (Fed. Cir. 1998). The standard in the Eleventh Circuit is the same. *See Am.'s Health Ins. Plans v. Hudgens*, 742 F.3d 1319, 1329 (11th Cir. 2014).

[4] TAS's first motion for preliminary injunction argued that Duke's RFP necessarily infringed claims 8, 21, 53, and 71-73, with claim 53 serving as the representative claim for the Court's consideration. *See* doc. 22, Pierson Aff. at ¶ 29. TAS's current motion differs a bit from that previous effort, with TAS contending the contract's specifications read on 24 of the patent's claims (claims 21-22, 27, 58-64, 68-69, and 71-82). *See* doc. 107. Because I found that number unwieldy for this stage of the litigation, I directed TAS to limit its claims to ten or less; it identified the nine above. *See* doc. 144. For both motions, however, TAS limited its arguments about infringement to literal infringement. But after the evidentiary hearing and a subsequent oral argument on TAS's second motion, TAS maintains that its operative amended complaint (doc. 96) necessarily encompasses an alternative theory of infringement under the doctrine of equivalents. *See* doc. 200. And, in any event, TAS adds that Defendants were on notice of this for purposes of the renewed motion for preliminary injunction. *See id.* (citing *Auburn Univ. v. Int'l Bus. Machs., Corp.*, 2012 WL 1986682, *3 (M.D. Ala. June 4, 2012). Irrespective of whether TAS's operative complaint satisfies Fed. R. Civ. P. 8's notice demands on this score, TAS failed to argue that Stellar or Amec infringed the '815 patent under the doctrine of equivalents in its renewed preliminary injunction papers. *See* doc. 177 at 91:23-92:5; doc. 115, Donald L. Verbick Aff. at ¶ 18 ("[E]ach and every element of the claims of the '815 patent … is found in … the TIC + TES

5

156; doc. 96 (alleging that Stellar (count one) and Amec (count two) violated 35 U.S.C. § 271). Thus, to prove infringement, TAS must show it is probable that Stellar and Amec's proposed TIAC system reads on all the steps of the '815's claimed method. *TecSec, Inc. v. Int'l Bus. Machs. Corp.*, 731 F.3d 1336, 1351 (Fed. Cir. 2013); *Shatel Corp. v. Mao Ta Lumber and Yacht Corp.*, 697 F.2d 1352, 1355 n. 2 (11th Cir. 1983) (in the context of reviewing the granting of a preliminary injunction, the term "substantial likelihood of success" equates to the term "probability" of success on the merits).[5] To determine if TAS can meet this hurdle, the Court first construes the claims properly and then compares those claims as construed to the accused process. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*).[6]

### 1. claim construction – "adjacent"

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled to the right to exclude." *Aventis Pharms. Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013) (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed Cir. 2005) (*en banc*)). To define the scope of the patented invention, courts first "look to the words of the claim themselves." *Id.* And when construing asserted claims,

---

system specified in Defendants' documents."). In short, TAS failed to meet its notice obligations under Fed. R. Civ. P. 65 and Local Rules 3.01(a) and 4.06(b). Accordingly, I do not address the applicability of the doctrine of equivalents.

[5] See note 3 for application of regional circuit law for procedural matters.

[6] I note that Stellar's non-infringement arguments are premised on its claim construction definitions. *See* doc. 135-12, Christopher T. La Testa Aff., Ex. 12 at pp. 15-46.

courts are to apply the viewpoint of one ordinarily skilled in the art, giving a heavy presumption to the ordinary and customary meanings of the terms as would be understood at the time of the invention. *Shire Dev., LLC v. Watson Pharms., Inc.*, 787 F.3d 1359, 1364 (Fed. Cir. 2015); *Aventis*, 715 F.3d at 1373; *Phillips*, 415 F.3d at 1312-13.[7] This "ordinary meaning" is taken from the context of the claim in which the disputed term appears and in the context of the whole patent document, including the specification. *Id.*

Both sides ascribe different meanings to certain claim terms – "gas turbine air inlet," "adjacent," "first chiller," "first water chiller," "second chiller," "second water chiller," "first and second chillers arranged in series," "duplex chiller," "single duplex chiller," and "fluid communication." Whether all these terms require the Court's construction now is a different matter. TAS, for example, asserts that none of these terms needs to be construed and that Stellar's effort to create a claim construction dispute is simply an effort to "create mischief." Yet when presented with Stellar's "mischief," TAS offers alternative constructions, all understandably supporting its infringement arguments. Stellar, on the other hand, urges the Court to construe the disputed terms (even if just Stellar disputes these terms) in a manner to predictably negate infringement. Irrespective of the Parties' claim construction motives, which are unfathomable and irrelevant to the resolution of the dispute, it is enough to conclude that one side's construction favors infringement and the other side's contradicts

---

[7] The exceptions to this rule are if the patentee, acting as his own lexicographer, sets out a definition or if the patentee disavows the full scope of the claim term either in the specification or during prosecution. *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014).

infringement.  Accordingly, the "dispute" is sufficiently real that claim construction at this stage of the litigation is required.  *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360, 1362 (Fed. Cir. 2010) (claim construction is necessitated by an "actual" or "fundamental" dispute).  But at this early point in the case, any attempt at claim construction is neither comprehensive nor final.  *Shuffle Master, Inc. v. VendingData Corp.*, 163 Fed. App'x 864, 867 (Fed. Cir. 2005).  The Court is free to engage in a "rolling" claim construction effort – one that can be revisited and altered as the circumstances require.  *Jack Guttman, Inc. v. Kopykake Enter., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002).  For our circumstances, namely to decide the merits of TAS's second preliminary injunction motion, I need only construe one of the terms, "adjacent," for that construction supports Stellar's view and supports the conclusion that the preliminary injunction motion should be denied because TAS will be unlikely to prove that the accused system reads on the '815 patent.

The term "adjacent" appears in every asserted claim in the phrase "an air cooler disposed adjacent the gas turbine inlet."  TAS asks me to construe the term as "near" or "close."  *See* doc. 154 at 2.  Stellar proposes "next to."  *Id.*  Admittedly, "adjacent" is a commonly understood word, and both sides' constructions are common alternatives for the term.  But in the end, "adjacent" is akin to a "word of degree," and when faced with such a claim construction dispute, courts look to whether the patent offers "some standard for measuring that degree."  *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1332 (Fed. Cir. 2010) (citation omitted).  And if the claim limitation (which is how the term "adjacent" is used) serves a "purely functional" purpose, the appropriate construction analysis "highly"

depends on the context the specification discloses to one skilled in the art. *Id.* at 1332-33.

Here, the patent shows that the air cooler and the gas turbine inlet are adjacent to each other for efficiency purposes. *See, e.g.,* doc. 96-1 at 1:43-45. One skilled in the art would read the specification narrowly. Namely, the term "adjacent" would be defined restrictively for the reason that the air cooler and the gas turbine would need to be in close proximity because the air temperature leaving the cooling unit would need to remain at the ideal temperature to maximize the turbine's efficiency. *See* doc. 96-1 at 28:42-45 (the system should normally provide a "constant inlet air temperature to the compressor of the gas turbine"). The greater the distance between the two components, the greater the likelihood that the temperature of the chilled air will materially affect power plant efficiency (particularly the case in hot weather climates). This functional reality supports Stellar's proposed construction – the patented system depends on the air cooler being "next to" the air inlet (recognizing that even "next to" is a term of degree). To further support this view, Figure 2(B) illustrates that the air chiller (labeled as 14) and the gas turbine system (labeled as 12) are components that are next to one another. *See also* doc. 96-1 at figure 1 (showing only a schematic arrow between the air cooler and the gas turbine compressor).[8] And, other

---

[8] TAS claims that the "optional inlet fogging" along the schematic arrow in this figure rebuts Stellar's proposed construction of "adjacent." However, figure 1 labels the "gas turbine compressor," rather than the gas turbine inlet; accordingly, the figure does not show that the fogging occurs between the air cooler and the air inlet of the gas turbine. Of course, I recognize that the mere embodiment of the patent does not serve to limit the claims to that specific configuration. *Prima Tek II, L.L.C. v. Polypap, S.A.R.L.,* 318 F.3d 1143, 1148 (Fed. Cir. 2003).

figures similarly depict elements that are described as "adjacent" as being next to each other.

*Compare* doc. 96-1 at 13:25-27 *with* figure 3.  For all these reasons, I construe the term

"adjacent" as used in the context of the specification to mean "next to."

*2. infringement analysis – the comparison*

TAS posits that claims 21 and 76 are representative.  As noted, both include the term

"adjacent."  I recite those claims here, italicizing "adjacent" and inserting my construction

of that term:

> Claim 21 – A system for chilling inlet air to a gas turbine plant, comprising:
> a. a gas turbine that includes a gas turbine air inlet; b. an air cooler disposed
> ***adjacent*** (***next to***) the gas turbine air inlet, the air cooler having an air inlet,
> an air outlet, a liquid water inlet and a liquid water outlet;  c. a thermal energy
> storage tank having a warm water port and a cool water port and a water
> reservoir defined within the tank, the reservoir having an upper first portion
> and a lower second portion, wherein the warm water port is in fluid
> communication with the first portion of the reservoir and the cool water port
> is in fluid communication with the second portion of the reservoir; [] d. a first
> water circulation system comprising a first chiller having a first chiller inlet
> and outlet and a second chiller having a second chiller inlet and outlet,
> wherein the outlet of the first chiller is in fluid communication [with] the
> inlet of the second chiller such that the first and second chillers are arranged
> in series, the outlet of the second chiller is in fluid communication with the
> cool water port, and the inlet of the first chiller is in fluid communication
> with the warm water port of the thermal energy storage tank; [and] e. wherein
> the liquid water inlet of the air cooler is in fluid communication with the
> second portion of the reservoir and the liquid water outlet of the air cooler is
> in fluid communication with the first portion of the reservoir.

> Claim 76 – A system for chilling inlet air to a gas turbine plant, comprising:
> a. a gas turbine that includes a gas turbine air inlet; b. an air cooler disposed
> ***adjacent*** (***next to***) the gas turbine air inlet, the air cooler having an air inlet,
> an air outlet, a liquid water inlet and a liquid water outlet; c. a thermal energy
> storage tank having a warm water port and a cool water port and a water
> reservoir defined within the tank, the reservoir having an upper first portion
> and a lower second portion, wherein the warm water port is in fluid

10

communication with the first portion of the reservoir and the cool water port is in fluid communication with the second portion of the reservoir; [] d. a first water circulation system comprising a first chiller having a first chiller inlet and outlet and a second chiller having a second chiller inlet and outlet, wherein the outlet of the first chiller is in fluid communication [with] the inlet of the second chiller such that the first and second chillers are arranged in series, the outlet of the second chiller is in fluid communication with the cool water port, and the inlet of the first chiller is in fluid communication with the warm water port of the thermal energy storage tank; [and] e. wherein the liquid water inlet of the air cooler is in fluid communication with the cool water port and the liquid water outlet of the air cooler is in fluid communication with the warm water port.

Doc. 96-1 at claims 21, 76.

 Comparing these construed claims to the accused process, as *Markman*, *supra*, instructs, the accused design does not have "an air cooler disposed ***adjacent (next to*)** the gas turbine air inlet" demanded by claims 21, 27, 58, 60, 63, 64, 76, 77, and 81.  Instead, as Stellar points out, a transition section and another section of duct work spanning 20 to 30 feet bridge between the back side of each air cooler and the bell mouth of the gas turbine.  *See* doc. 38, Curtis Lovelace Aff. at ¶¶ 19-21.  In short, TAS is not likely to prevail on the merits at the trial as Amec and Stellar's system does not literally read on the asserted claims of the '815 patent.[9]

_____

[9] Even if I were to accept TAS's construction of "adjacent," which I do not, TAS's argument for infringement, at least in the context of a preliminary injunction motion, is not persuasive.  Whether the accused system's air cooler is "near" or "close" to the turbine inlet (TAS's construction) presents a substantial jury question.  At the oral argument on the motion, TAS's counsel candidly conceded that if the Court were to conclude that the separation between the two apparatuses presented a substantial issue as to whether the two were "adjacent," the motion was due to be denied.  *See* doc. 177 at 15:12-23.  Admittedly, TAS's counsel disagreed with the premise to my hypothetical – that a substantial question existed given the distance mandated in the accused design.  *Id.*

### 3. a substantial question as to the '815 patent's validity

Although my non-infringement finding is enough to end the discussion, Stellar advances another reason to deny the motion – the '815 patent is invalid for obviousness. When confronted with an invalidity argument in the context of a preliminary injunction, the analysis obviously differs from that for infringement.  For invalidity, the patent holder bears the ultimate burden for establishing a likelihood of success on the merits as to the patent's validity.  *Altana Pharma AG v. Teva Pharms. USA, Inc.*, 566 F.3d 999, 1005-06 (Fed. Cir. 2009).  And if the purported infringer raises a substantial question about the patent's validity, the court should deny the motion.  *Id.* at 1006.  The burden here for the alleged infringer is less than it would be for the trial.  *Id.*  The applicable perspective for evaluating the invalidity arguments is "vulnerability."  *Id.*  If the alleged infringer meets this standard, which is something less than the clear and convincing standard needed to show invalidity at the trial, the burden then shifts to the patent holder to show the defense lacks substantial merit.  *Id.*

A patent claim is invalid for obviousness if the "differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103.  Therefore, "if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond that person's skill."  *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 401 (2007).

12

Stellar raises a substantial question about the obviousness of the '815 patent by pointing to two publications that were published before the original August 6, 1999 patent application to which the '815 patent claims priority (*see* doc. 132 at p. 9): "Summer Peaking Capacity Via Chilled Water Storage Cooling of Combustion Turbine Inlet Air" by John S. Andrepont and Sandra L. Steinmann (Andrepont) and "Innovations in District Heating and Cooling 1984-1994 and Their Economic Impact" by G. Mornhed and T.R. Casten (Mornhed).  The combination of the two, Stellar asserts, makes obvious the '815 patent's claims 21 and 76, which TAS identifies as the representative claims for infringement.  *See* doc. 136, Reindl Aff. at ¶ 12; doc. 135-12, La Testa Aff., Ex. 12 at 102-03; doc. 156. Andrepont illustrates the value of using chilled water thermal energy storage in turbine inlet air chilling systems.  *See* doc. 133, Andrepont Aff. at ¶ 4.i.  Mornhed concerns district energy systems, "including the use of large-scale chilled water systems with thermal energy storage as part of district cooling."  *See* doc. 36, Reindl Aff. at ¶ 47.

The Parties agree that Andrepont sets forth every limitation of asserted claims 21 and 76 except series chilling, and that Mornhed discloses series chilling.  *See* doc. 136, Reindl Aff. at ¶¶ 12, 31; doc. 109, Gregor P. Henze Aff., at ¶ 39.  Thus, the issue of obviousness in this case turns on whether, at the time of Mr. Pierson's invention, a person of ordinary skill would have put together the elements from Andrepont and Mornhed.  Specifically, the question is whether a person of ordinary skill  would have combined references that disclose series chilling in district cooling systems with references that focus on water-based turbine inlet air chilling with thermal energy storage.  *KSR*, 550 U.S. at 420 ("The question is not

13

whether the combination was obvious to the patentee but whether the combination was obvious to a person with ordinary skill in the art.").

Stellar argues that a person of ordinary skill would have realized that the benefits of series chilling to district cooling would have application to turbine cooling and, therefore, combined Mornhed and Andrepont. *See* doc. 136, Reindl Aff., at ¶ 13; doc.133, Andrepont Aff., at ¶ 6. Series chillers, which achieve greater water temperature differentials than single chillers, can benefit turbine inlet air chilling systems by reducing pumping flowrate and, therefore, decreasing pipe and water tank sizes. *See* doc. 133, Andrepont Aff., at ¶ 6.a. Stellar also argues that a person of ordinary skill would be motivated to add series chilling to TIAC systems for enhanced system capacity and economic benefits. *Id.* at ¶¶ 6.b.-c.

TAS responds that a person of ordinary skill would not have combined elements of Andrepont with Mornhed because the benefits resulting from Mornhed's use of series chillers in a district cooling system would not apply to Andrepont's TIAC system. *See* doc. 109, Henze Aff., at ¶¶ 24-25. TAS first points out that Andrepont's TIAC system already had "a large chilled water supply-to-return temperature differential" and, therefore, there was no need for enhanced cooling capacity from series chillers. *Id.* at ¶ 26. Additionally, TAS explains that series chillers are valuable in district cooling because they allow for reduced pumping power over "miles of pipes" but pumping power is much less of a concern in TIAC systems, where the chilled water is located near the gas turbines. *Id.* at ¶ 27-28. Accordingly, TAS argues that a person of ordinary skill would not have considered series chilling to be desirable for use in a TIAC system. *Id.*

14

To find obviousness, I need not determine that the prior art "explicitly convey a motivation to combine." *ABT Sys., LLC v. Emerson Elec. Co.,* Nos. 2014-1618, 2014-1700, 2015 WL 4924160, *9 (Fed. Cir. Aug. 19, 2015). Rather, "any need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining the elements in the manner claimed." *Id.* (quoting *KSR*, 550 U.S. at 420). Here, an essential component of TIAC systems, like the one in Andrepont, is chilled water. The cooler the water, the cooler the inlet air can become, and the more efficient the gas turbines can be. Therefore, in describing a system that benefitted from a large water temperature differential, Andrepont implicitly invited the use of series chillers to establish that differential.

All these methods, in some form or fashion, were familiar to one skilled in the art at the time of the '815 patent. "When a patent claims a structure already known in the prior art that is altered by the mere substitution of one element for another known in the field, the combination must do more than yield a predictable result." *KSR*, 550 U.S. at 416. In other words, "[i]f a person of ordinary skill in the art can implement a predictable variation [of a prior art reference with other prior art components], § 103 likely bars its patentability." *Id.* at 417. Here, the TIAC system in Andrepont, modified by substituting the single chiller with the series chillers in Mornhed, would have yielded a predictable result: a greater temperature differential in the water, which would bestow flowrate, capacity, and economic benefits on the TIAC system. And, "[w]hile these benefits may be different in degree when applied to [TIAC system] applications instead of district cooling applications, the benefits are no

15

different in kind." Doc. 133, Andrepont Aff., at ¶ 6.e.  Stellar raises a substantial question as to whether claims 21 and 76 were obvious under the combination of Andrepont and Mornhed, and TAS has failed to demonstrate, as it must, that Stellar's defense lacks substantial merit.  *Altana Pharma*, 556 F.3d at 1005-06.

### 4.  the Patent Trial and Appeal Board decision

On September 21, 2015, the Patent Trial and Appeal Board (PTAB) granted Stellar's March 17, 2015, petitions to institute *inter partes review* (IPR) of 36 claims of the '815 patent, including claim 21.  Doc. 194.  The PTAB's decision is relevant to the Court's evaluation of TAS's likelihood of success on the merits.  *Procter & Gamble Co. v. Kraft Foods Glob.*, 549 F.3d 842, 847-848 (Fed. Cir. 2008).  For the same reasons I have outlined here, the PTAB found that it was reasonably likely Stellar can show claim 21 was obvious over the combination of Andrepont and Mornhed.  Doc. 194-2 at 10.  The PTAB was likewise unpersuaded by TAS's argument that the benefits of series chilling to district cooling systems did not apply to TIAC systems.  *Id.* at 12.  It concluded that "the addition of a second chiller in series (or substitution of two chillers in series) to the cooling system disclosed in Andrepont constitutes the predictable use of prior art elements according to their established functions."  *Id.* at 12-13 (citing *KSR*, 550 U.S. at 417).

TAS, nonetheless, argues that the decisions have no effect on the claims that Stellar did not challenge before the PTAB, including representative claim 76, and emphasizes that Stellar consciously chose not to challenge those claims.  Doc. 197.  I disagree.  The PTAB's decision concerning claim 21 is highly instructive on the validity of claim 76, as the two

claims are nearly identical and the Parties' validity arguments are the same as to both claims.[10]   Moreover, TAS cannot criticize Stellar for failing to challenge the validity of a claim that was not explicitly at issue in the litigation when Stellar filed its IPR petitions.  *See* note 4.  Consequently, I find that the PTAB's decision further supports the conclusion that TAS is unlikely to succeed at trial as to both representative claims.[11]

   *D.  Conclusion*

   Given my findings as to non-infringement and invalidity, at least as these issues impact the preliminary injunction determination, I need not address the remaining factors in the preliminary injunction test, including Stellar's remaining arguments for denying the motion.  *See Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 973-74 (Fed. Cir. 1996) (district judge need not make findings concerning third or fourth factors of preliminary injunction test if the moving party fails to establish either of the first two factors).   For all these reasons, I recommend that TAS's motion for preliminary injunction (doc. 107) be DENIED.

---

   [10] Claim 76 is only different from claim 21 in that claim 76.e. requires the water inlet of the air cooler to be in fluid communication with the "cool water port" (rather than the "second portion of the reservoir"), and the water outlet of the air cooler to be in fluid communication with the "warm water port" (rather than the "first portion of the reservoir").

   [11]  The vulnerability of the '815's validity due to obviousness adversely impacts TAS's ability to meet the second preliminary injunction factor, the likelihood of irreparable harm if injunctive relief were not to occur.  *See Abbott Labs. v. Andrx Pharms., Inc.* 452 F.3d 1331, 1334-37 (Fed. Cir. 2006) (a patent holder who has not shown likelihood of success in preliminary injunctive effort is not entitled to rebuttable presumption of irreparable harm).

IT IS SO REPORTED in Tampa, Florida on September 28, 2015.


_Mark A. Pizzo_
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE


## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

18